**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TOBIN DON LEMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 11-CV-500-JED-PJC |
| | ) |
| MIKE WATERS, Sheriff; et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action filed by Plaintiff, Tobin Don Lemmons, a state

prisoner appearing *pro se*. In his lengthy Complaint (Doc. 1), Plaintiff identifies sixteen counts

challenging multiple searches and seizures conducted at his home by law enforcement officials, the

adequacy of medical care provided at the Pawnee County Jail (PCJ), and the conditions of his

relatively brief periods of confinement at PCJ. Defendants Adams, Waters, Shaw, Stout, Clymer,

and Fenton have filed dispositive motions addressing most, but not all, of Plaintiff's claims. For the

reasons discussed below, those dispositive motions shall be granted, although the dismissal as to five

of the counts is without prejudice. In addition, Defendants Hammons, Stout, Clymer, and Fenton

may file motions for summary judgment addressing Plaintiff's remaining claims.

The docket sheet for this case demonstrates that, in response to the Complaint, Pawnee

County Sheriff Mike Waters prepared and filed a Special Report (Docs. 70, 71). Before the Court

are the motion to dismiss filed by Defendants J.T. Adams, Pawnee County Commissioner, and

Sheriff Mike Waters (Doc. 73); the motion to dismiss or in the alternative for summary judgment

(Doc. 74) filed by Defendant Jerri Shaw, the PCJ Administrator; and the partial motion to dismiss

or in the alternative partial motion for summary judgment (Docs. 75, 79) filed by Defendants Wesley

Clymer, Todd Fenton, and Clint Stout, all Pawnee County law enforcement officials. Plaintiff filed

responses to each of these motions (Docs. 86, 92, 93, 94).  Defendants filed a joint reply (Doc. 89).  In addition, Plaintiff filed motions "to deny motions" (Doc. 97), for release of documents (Doc. 102), and to reconsider the Court's prior denial of Plaintiff's motion for appointment of counsel (Doc. 103).  Defendants filed responses to Plaintiff's motions (Docs. 98, 104, 105), and Plaintiff filed replies thereto (Docs. 100, 106).

For the reasons set forth below, the Court finds that Defendants' dispositive motions are well-taken and their motions shall be granted.  Plaintiff's pending motions shall be denied.  In addition, within thirty (30) days of the entry of this Order, Defendant Keith Hammons may file a motion for summary judgment with regard to Plaintiff's allegations against him as asserted in Counts IX and XII of the Complaint.  Within thirty (30) days of the entry of this Order, Defendants Fenton and Clymer may file a motion for summary judgment addressing Plaintiff's allegation, as asserted in Count XII, that during a search of his home, they destroyed Plaintiff's property. Within thirty (30) days of the entry of this Order, Defendant Stout may file a motion for summary judgment addressing the claim of excessive use of force, as raised in Count XI.

### BACKGROUND

When Plaintiff filed his Complaint (Doc. 1) on August 11, 2011, he was a prisoner in custody at PCJ, located in Pawnee Oklahoma. Prior to filing this action, Plaintiff was convicted, on his pleas of guilty entered in multiple Pawnee County District Court criminal cases. First, on September 30, 2010, Petitioner pled guilty to Unlawful Possession of Methamphetamine in Case No. CF-2010-95. Thereafter, on July 15, 2011, he pled guilty to Unlawful Possession of Marihuana, Unlawful Possession of Drug Paraphernalia, and Destroying Evidence in Case No. CF-2011-21; to Endeavoring to Manufacture Methamphetamine, Unlawful Possession of Marihuana With Intent to

Distribute, and Unlawful Possession of Methamphetamine in Case No. CF-2011-43; to Maintaining a Place for Keeping/Selling Drugs in Case No. CF-2011-64; and to Endeavoring to Manufacture Methamphetamine and Possession of Marihuana in Case No. CF-2011-94.  He is now in custody of the Oklahoma Department of Corrections (ODOC) serving concurrent sentences totaling fifteen (15) years.

As to the Complaint filed in this case, the Court noted, in a prior Opinion and Order (Doc. 32), that,

> Plaintiff's handwritten Complaint (Doc. 1) is far from a model of clarity.  His handwriting is small and almost illegible. However, it appears that Plaintiff's claims arise from (1) searches and seizures of his home conducted by the Pawnee County Drug Task Force on August 20, 2010, February 10, 2011, and July 11, 2011; (2) the medical care provided at the PCJ; and (3) conditions of confinement at the PCJ.  In his original Complaint, Plaintiff identifies approximately sixteen (16) counts.[1]

*See* Doc. 32.  In that same Opinion and Order, the Court dismissed Counts VIII and XIII for failure to state a claim upon which relief may be granted and, as to the remaining claims, directed service of process by the U.S. Marshal. *See id*. The Court also denied Plaintiff's request for Defendant Shaw's termination from her employment.  *Id.*  In the "Nature of Case" section of the Complaint, Plaintiff writes:

> I was arrested and taken to jail after my home had been invaded by 3 members of the Drug Task Force who were in my home while I was down the alley at two girls' house. At the time, they did not have a warrant nor probable cause affidavit nor consent from my parents who were in the backyard working at the time of this incident. I also have Hep 'C', diagnosed with severe degenerative disc disease with extreme spuracny [sic] of the neck and back, plantar fasciitis of both feet, liver cancer, questionable intestinal/colon cancer and a 23 year history of 3 separate

---

[1]     Counts I-XIV of the Complaint are clearly numbered. It appears two additional counts are contained in the Complaint but are not numbered: "Count XV" appears to begin with the statement "Plaintiff sustained a heart attack . . ." and "Count XVI" appears to be subtitled "Racism Destruction of County Property Without Any Type Reprecussions [sic]."  *See* Doc. 1.

> categories of seizures (1) grand mal, (2) myclonic [sic], (3) catatonic [sic] seizures and numerous mentally challenged phycialogical [sic] conditions. Being denied medical attention, medications, and the formal answering of sick call requests, response to grievance to exhaust administrative remedies, my original complaint was combed through and [illegible] after my father brought them to the Sheriff's Office and they were trashed, looked through the grievances and then backdated 9 months later, thereafter my attorney sent me malicious biased [illegible] that Plaintiff also diagnosed with Hepatitis C but have yet to seek infureon [sic] treatment and colitis, these are my physical ailments, for which I have been undergoing treatment through my primary care physician, numerous specialists and pain management rehabilitative treatment for severe and extreme pain, I am on the medications (pain) Norco 10/325, M-S Contin 30 mg. and Ceriapot 350 mg. After 2 days, I went into severe withdrawals because Ms. Shaw would not let me have my pain meds.

*See* Doc. 1 at 6.[2]  Based on those and other allegations concerning his convictions and sentences, Plaintiff identified 16 claims in his Complaint. *See* Doc. 1. As stated above, Counts VIII and XIII were previously dismissed. *See* Doc. 32.  In Counts I, XI, and XII, Plaintiff raises claims challenging searches of his home and seizures of personal property during the course of his various arrests in 2010 and 2011, and the use of force during one of those arrests.  *See* Doc. 1.  In Counts II-VII, IX, X, XIV-XVI, Plaintiff challenges the adequacy of medical care and the conditions of confinement during his incarceration at the PCJ.  *Id.*  Plaintiff seeks compensatory damages.  *Id.*

## *ANALYSIS*

### A.  Dismissal standard

Defendants Waters and Adams seek dismissal of Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6).  *See* Doc. 73.  In addition, Defendant Shaw filed a motion to dismiss (Doc. 74) and Defendants Fenton, Clymer, and Stout filed a partial motion to dismiss (Doc. 75). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual

---

[2]   Any page number identified in this Opinion and Order refers to the CM/ECF page number found at the top right side of the document.

allegations, assumed to be true, that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.*  at 555.  A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff.  *Id.*  However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. *Id.* at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997).

**B.  Summary judgment standard**

Defendants Fenton, Clymer, Stout, and Shaw have filed motions for summary judgment (Docs. 74, 79).  Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## C.  Defendants' dispositive motions

### 1.  Defendants Waters and Adams

Defendants Waters and Adams assert that Plaintiff's Complaint fails to state a claim upon which relief may be granted. Defendant Waters is the Sheriff of Pawnee County. In the caption of his Complaint, Plaintiff identifies Defendant "J.T." Adams as a Pawnee County Commissioner.

Plaintiff makes direct allegations against Defendant Waters only in Count VIII.  However, that Count was dismissed by the Court prior to service.  There are no specific allegations anywhere in the Complaint against Defendant Adams.

Personal participation is an essential element of a § 1983 claim.  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *see also Garrett v. Stratman*, 254 F.3d 946, 950 n.4 (10th Cir. 2001) (noting that medical official must have "played a role in the challenged conduct" to be liable for an Eighth Amendment violation). As a result, government officials have no vicarious liability in a section § 1983 suit for the misconduct of their subordinates because "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (quotation omitted). Instead, a supervisor is liable only if he is "personally involved in the constitutional violation and a sufficient causal connection . . . exist[s] between the supervisor and the constitutional violation." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quotation omitted); *see also Schneider v. Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (requiring a plaintiff to show an "affirmative link" between the supervisor and the constitutional violation).

Plaintiff's allegations are insufficient to hold Defendants Waters and Adams liable in their individual capacities.  No allegation in the Complaint suggests that either Defendants Waters or Adams personally participated in the incidents giving rise to Plaintiff's claims.  In his response to the motion to dismiss filed by Defendants Waters and Adams, Plaintiff alleges only that both defendants were "aware of Plaintiff's medical situation, the way the jail was being operated, and were accomplices theretoo [sic] their employees conduct and both are liable for damages for not taking precautionary measure to correct the conduct complained of by this Plaintiff and others

7

similarly situated and were responsible for correcting any deficiencies concerning the PCJ and its employees." *See* Doc. 94. Plaintiff also states that Waters and Adams "were responsible for the safe operation of Pawnee County Jail." *See id.* Those conclusory allegations do not demonstrate personal participation. To the extent Plaintiff seeks to hold either Waters or Adams liable based on their supervisory roles, his generalized allegation regarding their responsibilities is insufficient to suggest an "affirmative link" between those Defendants and the alleged constitutional violations. Therefore, the Complaint fails to state a claim as to Defendants Waters and Adams in their individual capacities.

To the extent Plaintiff sued Waters and Adams in their official capacity, his Complaint fails to state a claim upon which relief may be granted. Claims against a government officer in his official capacity are actually claims against the government entity for which the officer works. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Because section 1983 does not recognize the theory of respondeat superior as a basis for liability, in order to succeed on an official capacity claim against a county official under section 1983, a plaintiff must allege that he suffered injuries of a constitutional magnitude as the result of an official policy, custom, or practice. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978). The plaintiff may allege an action taken as a result of policy by showing that the constitutional injury resulted from the action or decision of an individual with final policy making authority with respect to the action ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986). Plaintiff may also show a policy by demonstrating a pattern of conduct or series of acts which reasonably imply the existence of a policy or custom. *See Strauss v. City of Chicago*, 760 F.2d 765, 768-69 (7th Cir. 1985). In addition, a governmental entity may not be held

liable for monetary damages where there was no underlying constitutional violation by any of its officers. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

As to any claim against Waters and Adams in their official capacities, Plaintiff claims only that "there were no policies or procedures . . . implemented or followed by the defendants prior to the implementation of the new county jail . . . ." *See* Doc. 94.  Plaintiff has not alleged any facts sufficient to create an inference of a connection between the purported lack of policies and any injury he sustained while in custody at the jail. Nor does he allege that the absence of a policy was itself a policy, practice or custom of Waters or Adams.  Plaintiff's conclusory allegations are insufficient to identify any "official policy, custom, or practice" resulting in injuries of a constitutional magnitude.  *Monell*, 436 U.S. at 690.  His Complaint fails to state a claim against Defendants Waters and Adams in their official capacities.

Because Plaintiff's Complaint fails to state a claim against either Defendants Waters or Adams in their individual or official capacities, the motion to dismiss filed by those defendants is granted.  Defendants Waters and Adams are dismissed from this action without prejudice.

### 2. Defendants Stout, Clymer, Fenton – Count I

In Count I of his Complaint, Plaintiff asserts that on August 30, 2010, he arrived home to find that his home was being unlawfully searched, without a warrant or consent, and "ransacked" by "3 members of the Pawnee County Drug Task Force."  *See* Doc. 1 at 6.  Defendants Fenton, Clymer, and Stout seek dismissal or entry of summary judgment on Count I.  *See* Doc. 75. Defendants first explain that there was no search of Plaintiff's house conducted on August 30, 2010, as Plaintiff specifically alleges.  On that date, Plaintiff was in custody at the PCJ.  However, a "Probable Cause Affidavit," dated August 28, 2010, and provided as part of the Special Report, *see*

Doc. 70-3, Ex. A, demonstrates that on August 27, 2010, Defendants Clymer and Fenton, members of the District 10 Drug Task Force, and Defendant Stout, a Pawnee County Deputy Sheriff, went to Plaintiff's residence at 304 W. Kiowa in Cleveland, Oklahoma, based on an anonymous tip that illegal drug activity was occurring at that house. Defendants arrived at Plaintiff's house at approximately 1:00 p.m. *Id.*   Defendant Clymer knocked on the door, Plaintiff answered.   *Id.* Plaintiff consented to Defendant Clymer's request to search the premises. *Id.* Defendants asked to see Plaintiff's prescription medications. *Id.* Plaintiff withdrew three pill bottles from his pockets. Defendant Fenton opened one of the pill bottles and found three small baggies containing a white crystalline substance. *Id.* The crystalline substance field-tested positive for methamphetamine.   *Id.* Plaintiff was arrested and transported to the PCJ. *Id.*   Based on those events, Plaintiff was charged with Unlawful Possession of Methamphetamine in Pawnee County District Court, Case No. CF-10-95.  On September 30, 2010, Plaintiff entered a plea of guilty to that charge. *See* Doc. 70-4, Ex. 4. Ultimately, Plaintiff was sentenced to five years, all suspended, with the Oklahoma Department of Corrections. *Id.*

Plaintiff filed a response (Doc. 86) to Defendants' partial motion to dismiss or for partial summary judgment.  In that response, Plaintiff complains of various rulings by the Court, including the denial of his motion for appointment of counsel. However, he did not controvert the summary judgment evidence provided by Defendants.  *See* Doc. 86. On September 26, 2012, Plaintiff filed a second response (Doc. 93) to Defendants' partial motion.  In his second response, Plaintiff claims he did not provide consent to search and alleges he was not even present when Defendants arrived at his house.  *Id.*  He claims that his parents and an electrical contractor were present and witnessed the timing of his arrival.  *Id.*  He further claims he was "one block north of the dwelling with two

other witnesses" when Defendants initiated the search. *Id.* However, Plaintiff provides no witness statements or affidavits supporting his self-serving claims. Although Plaintiff has been incarcerated during much of the time since August 27, 2010, he nonetheless could have obtained statements from the identified witnesses, including his parents, the electrical contractor, and his acquaintances, if his allegations are true.[3] In the end, Plaintiff provides no evidence suggesting that he did not give valid consent to the search of his house on August 27, 2010.

Regardless of whether or not Plaintiff gave consent for the search, his civil rights claim is precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The Court recognizes that not every civil judgment will imply the invalidity of the underlying criminal conviction because "doctrines like independent source and inevitable discovery, and especially harmless error" allow a court to recognize a constitutional violation while upholding the conviction itself as constitutional. *Id.* at 487 n.7 (citations omitted). For example, a claim for damages that would only invalidate one basis for a conviction is still cognizable under § 1983 as long as there are other independent grounds supporting the conviction. *See Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 560 (10th Cir. 1999) (allowing a malicious prosecution claim to proceed

---

[3]   For example, Plaintiff's father went to the PCJ on more than one occasion to deliver medications for Plaintiff and could have provided an affidavit if Plaintiff's allegations challenging Defendants' contention that Plaintiff consented to the search were true. *See* Doc. 71 at 19, 63, 127, 167, 168.

"[b]ecause the failure of one basis for revoking probation would not invalidate the revocation as long as there are other grounds supporting the revocation"). However, in the "rare situation" where all of the evidence against the plaintiff was obtained as a result of an allegedly illegal search and seizure, the *Heck* bar applies because such a claim would necessarily imply the invalidity of the conviction. *See Trusdale v. Bell*, 85 Fed. Appx. 691, 693 (10th Cir. Dec. 30, 2003) (unpublished)[4] (concluding *Heck* barred prisoner's § 1983 claims because court was faced with a rare situation where all of the evidence obtained was the result of the execution of an allegedly invalid no-knock search warrant); *see also Beck*, 195 F.3d at 559 n. 4.

Here, as noted, Plaintiff pled guilty to and was convicted of the crime of Possession of a Controlled Dangerous Substance (Methamphetamine). The only evidence supporting that conviction, three small baggies containing methamphetamine, was found on Plaintiff's person in his pockets after Defendants allegedly entered Plaintiff's home without consent and without a warrant. Thus, the evidence found in Plaintiff's pockets formed the basis for his conviction. Plaintiff clearly attributes discovery of the evidence leading to the charge against him solely to the allegedly unlawful search. The doctrines of independent source, inevitable discovery, and harmless error do not save this claim from the *Heck* bar. Therefore, Plaintiff may not challenge in this civil rights action the constitutionality of the search conducted on August 27, 2010, resulting in the seizure of the drugs forming the basis of his conviction unless he demonstrates that the conviction has been overturned or otherwise invalidated.  Plaintiff does not refute the evidence demonstrating that on September 30, 2010, he pled guilty to Unlawful Possession of Controlled Dangerous Substance. Nor has he demonstrated that his conviction has been invalidated. Therefore, under *Heck*, any claim for

---

[4]    This unpublished opinion is cited for persuasive value.  *See* 10th Cir. R. 32.1(A).

damages based on the allegation that the search and seizure on August 27, 2010, was unconstitutional fails to state a claim upon which relief may be granted and shall be dismissed without prejudice.

Lastly, Defendants seek dismissal of any separate constitutional claim based on Plaintiff's unsupported allegation that Defendants "ransacked" his house during the search on August 27, 2010. Plaintiff provides no factual information regarding his allegation that his house was ransacked by law enforcement officers.  He fails to identify any damages he sustained as a result of the alleged ransacking during this search.  Further, nothing in the record suggests a basis for damages resulting from this search.  The Court agrees with Defendants that Plaintiff's conclusory allegations are insufficient to state a claim upon which relief may be granted.  For that reason, the claim shall be dismissed without prejudice.

For those reasons, Plaintiff's claims asserted in Count I fail to state a claim upon which relief may be granted. Hence, the partial motion to dismiss filed jointly by Defendants Clymer, Fenton, and Stout shall be granted. The alternative motion for summary judgment filed jointly by Defendants Clymer, Fenton, and Stout shall be declared moot.

### 3. Defendant Jerri Shaw

In his Complaint, Plaintiff identifies numerous claims concerning the alleged inadequacy of medical care provided at PCJ and the conditions of confinement at PCJ.  *See* Doc. 1. He states that Defendant Jerri Shaw, the PCJ Administrator is responsible for the identified inadequacies.  *Id.*  In response to the Complaint, Defendant Shaw filed a motion to dismiss or, in the alternative, motion for summary judgment.  *See* Doc. 74.  The Court shall address each of Plaintiff's claims against Defendant Shaw.

13

### a.  Inadequate medical care

As a preliminary matter, the Court notes that, in Count II, Plaintiff makes the conclusory allegation that he was denied adequate medical care in violation of his rights to equal protection of the laws. Equal protection "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Where a classification targets a suspect class or involves a fundamental right, it must be narrowly tailored to achieve a compelling governmental interest.  *KT & G Corp. v. Attorney Gen. of Okla.*, 535 F.3d 1114, 1137 (10th Cir. 2008).  If it does not, it need only be rationally related to a legitimate government purpose.  *Id.*  Religion and race are suspect classifications.  *See, e.g., Abdulhaseeb*, 600 F.3d 1301, 1322 n.10 (10th Cir. 2010) (religion); *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002) (race).  In order to violate the equal protection clause, state action must be motivated by an improper purpose, rather than merely having a disparate impact.  *Washington v. Davis*, 426 U.S. 229, 239-42 (1976).  In this case, Plaintiff makes no factual allegations supporting his conclusory claim that the medical care he received while in custody at the PCJ violated the equal protection clause.  He does not claim to be a member of a suspect class, nor does he allege involvement of a fundamental right, nor does he claim that the medical care he received was different from that received by similarly situated prisoners at PCJ.  His Complaint fails to state a claim for violation of the equal protection clause with regard to medical care.

To state a § 1983 claim for a violation of a convicted prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A pretrial detainee's right to receive adequate medical care is protected by the Fourteenth Amendment and the standard for

14

evaluating his claim under the Fourteenth Amendment is the same. A plaintiff must allege "deliberate indifference to a prisoner's serious medical needs." *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985).

"Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 827 (1994). In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified that the deliberate indifference standard under *Estelle* has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind. *Id.* at 298-99. Negligence does not state a claim under § 1983 for deliberate indifference to medical needs. *See Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 n.7 (10th Cir. 2001) (internal citations and quotation marks omitted). A delay in medical care only constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. *Id.* at 1276.

### i. Medical care provided to Plaintiff -- in general

Defendant Shaw argues that she is entitled to summary judgment on Plaintiff's claims of inadequate medical care. The Court agrees. Records provided as part of the Special Report demonstrate that Plaintiff was in and out of custody at the PCJ for a total of 162 days during the one-year period from August 27, 2010 to August 23, 2011. Those 162 days spanned five periods, as follows: (1) for 34 days from August 27, 2010, to September 30, 2010, *see* Doc. 71, Ex. 9L; (2) for 12 days from January 31, 2011, to February 11, 2011, *id.*, Ex. 9Q; (3) for 3 days from March 29, 2011, to April 1, 2011, *id.*, Ex. 9U; (4) for 41 days from April 12, 2011, to May 23, 2011, *id.*, Ex.

9MM; and (5) for 72 days from June 12, 2011, to August 23, 2011,[5] *id.*, Ex. 9FFF.  In addition, as part of the Special Report, Defendant Shaw has provided a fourteen page Affidavit detailing the medical care provided to Plaintiff during his periods of incarceration at PCJ, *see* Doc. 71, Ex 9, supported by records maintained by PCJ or obtained from other health care providers and the Oklahoma Department of Corrections.  In general, records maintained by PCJ demonstrate that during Plaintiff's incarceration at PCJ, he was routinely given prescription medications on a daily basis, *see* Doc. 71, Exs. G, P, DD, RR; was transported to and treated at Cushing Regional Hospital for seizures, *see* Doc. 71, Ex. D, E; was seen by Dr. Clymer for his complaints of a hernia and leg pain, *id.*, Exs. X, BB; and was transported to and treated at Cushing Regional Hospital for chest pain, *id.*, Exs. TT, UU. Each time Plaintiff was taken to the hospital, he received treatment and was stabilized before being returned to PCJ. In addition, although Dr. Clymer found that Plaintiff has a left inguinal hernia and recommended that he consult with a surgeon, Dr. Clymer described the hernia as "not emergent at this time." *Id.*, Ex. BB. That diagnosis was confirmed by Charles O'Leary during his examination of Plaintiff on June 9, 2011. *Id.*, Ex. PP.

In addition, at Plaintiff's request, jail officials contacted or attempted to contact physicians who had provided medical treatment to Plaintiff, including Erin Trippy at the Little Tree Medical Clinic, located in Drumright, Oklahoma.  On September 29, 2010, Trippy faxed a letter to Plaintiff at the PCJ advising him that "Little Tree Medical Clinic will no longer be providing medical services for you. You did sign a pain contract with Little Tree Medical Clinic outlining guidelines you must follow when receiving pain medications. Due to your incarceration this contract is null and

---

[5]   Plaintiff filed his civil rights Complaint on August 11, 2011, or during the final period of his incarceration at the PCJ.

void.  Please find a new provider for your future needs." *See* Doc. 71, Ex. K. Also, on March 31,

2011, Trippy responded to a request from PCJ by faxing a letter stating "Tobin Lemmons is no

longer in the care of the providers at Little Tree Medical Clinic. He apparently has sought medical

treatment elsewhere and been refused. Our providers have agreed to continue his seizure medication

. . . This will be the only medication a prescription will be written for." *Id.*, Ex. T. Jail officials also

requested and received Plaintiff's medical records regarding treatment he received from Charles

O'Leary, PA-C, at the Hominy Family Health Center, *id.*, Ex. PP. On July 1, 2011, Plaintiff was

taken via medical transport to Cushing Regional Hospital complaining of chest pain/panic attack.

*Id.*, Ex. TT.  After Care Instructions provided by Cushing Regional Hospital stated that the cause

of Plaintiff's chest pain was "not yet known . . . the chance of this pain representing a life-

threatening condition is extremely small." *Id.*, Ex. UU. Those records establish that Plaintiff

received medical care during his various incarcerations at PCJ.  In addition, the records reflect that

actions were taken by Defendant Shaw and others at PCJ, and that the jail officials were not

deliberately indifferent in providing medical care to Plaintiff.

### ii.  Plaintiff's specific claims regarding inadequate medical care

As to the specific claims regarding medical care, Plaintiff alleges in Count II of his

Complaint that he has been diagnosed with severe degenerative disc disease with extreme spurring

of the neck and back, plantar fasciitis of both feet, twisted intestinal tract and liver cancer, and

questionable colon cancer with a bulging hernia.  *See* Doc. 1 at 6-7. PCJ records reflect that Plaintiff

was seen by Dr. Clymer on April 29, 2011, for his complaints of a hernia and leg pain, *see* Doc. 71,

Exs. X, BB. Although he makes no specific complaint regarding treatment he received or failed to

receive for the conditions listed in Count II, he does complain that Defendant Shaw refused to take

17

him to a doctor and displayed deliberate indifference to his medical treatment with respect to his seizure activity.  *See* Doc. 1.  He specifically complains that because he was not provided prescription medications for seizures for a period of seven (7) days, he suffered a grand mal seizure on September 3, 2010. *Id.* at 8.

The records provided by Defendants reflect that when Plaintiff was booked-in to the PCJ on August 27, 2010, he answered "yes" that he had epilepsy, "no" when asked if he needed immediate medical attention, "no" when asked if he was currently taking any type of prescribed medication, "no" when asked if he was required to take this medication as prescribed for the balance of his health, and made no remarks regarding what effects would occur should he not receive his medication on a timely basis.  *See* Doc. 71, Ex. A. Plaintiff signed the form thereby implicitly attesting to the accuracy of his answers. *Id.*  In response to Defendant Shaw's motion for summary judgment, Plaintiff asserts that he did not give the answers shown on the form.[6] *See* Doc. 92. Plaintiff does not offer any explanation as to why the answers reflected on the form were erroneous, or how the "answers" allegedly differed from what is stated on the form.

Defendant Shaw states in her affidavit that, on August 31, 2010, or four days after Plaintiff was booked-in to PCJ, she received from Plaintiff a request form asking for his medications.  *See* Doc. 71, Ex. 9 at ¶ 4.  On the form, Defendant Shaw wrote that Plaintiff had "been allowed to call for medications twice."  *See* Doc. 71, Ex. B.  The record provided by Defendants also contains a

_____

[6]   This assertion is not backed up by any sworn statement or documentation. Indeed, the affidavit of Defendant Shaw provides a fuller account of Plaintiff's actions during this first period of incarceration at PCJ. *See* Doc. 71, Ex. 9 at ¶¶ 3-11.  The Court notes that the "Medical Information" sheets completed each time Plaintiff was booked-in at PCJ *after* August 27, 2010, reflect that Plaintiff told the intake officer that he was taking prescription medications. *See* Doc. 71, Exs. M, R, V, NN.

"Receipt for Property Received" reflecting that on September 3, 2010, Plaintiff's father delivered three bottles of medications: carisoprodol, clonazepam, and gabapentin.[7] *See* Doc. 71, Ex. C. On that same day, at 3:03 p.m., Plaintiff suffered seizure symptoms and was transported to and treated at Cushing Regional Hospital for seizures, *see* Doc. 71, Ex. D, E. Once he was stabilized, he was returned to PCJ where he was given medications daily throughout his periods of incarceration at PCJ. *See* Doc. 71, Exs. G, P, DD, RR.

Aside from the noted unsupported claims made by Plaintiff, he has also failed to controvert the summary judgment record provided by Defendants. That record refutes Plaintiff's claim that Defendant Shaw was deliberately indifferent to his seizure disorder. Upon book-in at PCJ, Plaintiff failed to advise jail officials that he was taking prescription medications. PCJ officials promptly obtained medical care for Plaintiff when he exhibited seizure symptoms and continued to administer his prescription medications thereafter. Plaintiff's Complaint concerning the medical care recounted above is that it was not speedier, and that he suffered during the interim. Nevertheless, Plaintiff has not presented any fact to support deliberate indifference by Defendant Shaw to a substantial risk of serious medical harm to Plaintiff. Instead, the facts presented by Plaintiff demonstrate that he received timely care for his various ailments, including his seizure disorder. Plaintiff has not shown he was harmed by the delays in medical care or that any delay resulted from deliberate indifference to a perceived risk of serious medical harm to him. *Oxendine*, 241 F.3d at 1276. Further, plaintiff has pointed to no test or treatment recommended by any of his doctors which was not provided by the PCJ. Because there is no genuine issue of material fact with regard to Count II, Defendant Shaw

---

[7]     According to the Physician's Desk Reference, *see* www.pdr.net, carisoprodol is a skeletal muscle relaxant, clonazepam is used to treat seizure disorders, and gabapentin is used to treat epileptic seizures.

is entitled to judgment as a matter of law and her motion for summary judgment is granted as to Count II.

In Count III, Plaintiff complains of the procedures used at the PCJ for dispensing medications. *See* Doc. 1 at 7. Specifically, he alleges that there is no licensed practical nurse and that "improper dosages" of medications are dispensed in "unsterile" conditions. *Id.* As stated above, deliberate indifference to serious medical needs is a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. To act with deliberate indifference is to recklessly disregard a substantial risk of serious harm. *Farmer*, 511 U.S. at 836. Defendants' unrebutted evidence shows that jail staff members deliver medications to the prisoners at PCJ. *See* Doc. 71, Ex. 9 at ¶ 12. The medications are placed in small pill cups. Defendant Shaw admits that if "a pill happens to drop to the floor, it is quickly picked up" and if "the pill does not appear damaged, it will be provided to the inmate." *Id.* Plaintiff has made no showing that unlicensed correctional officers exercise independent medical judgment with respect to distribution of the medications nor has he alleged that any defendant withheld his medication, or distributed incorrect medication that harmed him or worsened his pain. Defendants' exhibits show that Plaintiff was provided substantial medical care while incarcerated at PCJ.  Furthermore, Plaintiff has failed to demonstrate that Defendant Shaw acted with deliberate indifference to a serious medical need in dispensing Plaintiff's medications. Because there is no genuine issue of material fact with regard to Count III, Defendant Shaw is entitled to judgment as a matter of law and her motion for summary judgment is granted as to Count III.

In Count IV, Plaintiff alleges Defendant Shaw was deliberately indifferent to his mental health needs. *See* Doc. 1 at 9. He provides a list of his mental illnesses and claims that Defendant Shaw failed to administer his medications causing him "to suffer from hearing voices, halucinations

20

[sic], and seeing things that are not realistic, causing me to have panic attacks which send me into seizures." *Id.* The record provided by Defendants reflects that each time he was booked-in to PCJ, Plaintiff stated that he had received psychiatric care.  However, he never identified any prescription medications when booked-in other than those prescribed for seizures, gastrointestinal disorders, and pain. *See* Doc. 71, Exs. A, M, R, V, and NN.  Furthermore, Plaintiff has not alleged that he suffered substantial harm during his relatively brief periods of incarceration at the PCJ as a result of not receiving treatment for mental health issues. A delay in medical care only constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. *Oxendine*, 241 F.3d at 1276 (10th Cir. 2001).  Plaintiff has again failed to demonstrate that any defendant acted with deliberate indifference to a serious medical need.  Because there is no genuine issue of material fact with regard to Count IV, Defendant Shaw is entitled to judgment as a matter of law and her motion for summary judgment is granted as to Count IV.

In Count V, Plaintiff claims that he has been diagnosed with Hepatitis C and scheduled for "inferon [sic] treatment." *See* Doc. 1 at 9. He also alleges in Count V that he was not provided a high fiber diet and "Ensure Plus" three times a day as recommended by his doctor, and that he had lost 50 + pounds "since December 2009." *Id.*  First, even if Plaintiff has been diagnosed with Hepatitis C, nothing suggests that any defendant was deliberately indifferent in failing to provide interferon treatment because nothing in the medical records provided by Defendants suggests that any health care provider had recommended interferon treatment for Plaintiff. Similarly, the records provided by Defendants do not reflect that any doctor made dietary recommendations for Plaintiff. Furthermore, Plaintiff's conclusory allegation that he lost weight during his incarceration at the PCJ is belied by the record. Significantly, Plaintiff does not claim that his weight loss was the result of

21

treatment received at PCJ.  Furthermore, each of the Medical Information sheets filled out and signed by Plaintiff at the time he was booked-in to PCJ reflect that he weighed 135 pounds. Plaintiff's medical records from his examination at the Hominy Family Health Center reflect that, on June 9, 2011, he weighed 143.4 pounds. Those records demonstrate that Plaintiff's weight had stabilized -- or slightly increased -- during his various stays at PCJ.  Hence, the record reflects that Plaintiff was not harmed by any delay in being provided "Ensure Plus" or a high fiber diet. Because there is no genuine issue of material fact with regard to Count V, Defendant Shaw is entitled to judgment as a matter of law and her motion for summary judgment is granted as to Count V.

As part of Count XI, Plaintiff claims that as a result of being handcuffed too tightly by Defendant Stout, *see* Part E, below, the circulation to his hands was cut off.  *See* Doc. 1 at 17-18. Plaintiff alleges that he complained and requested medical attention, but his request was denied, resulting in "permanent damage too [sic] both hands." *Id.* at 18. Although the date of the alleged handcuffing incident is not clear,[8] the jail records for Plaintiff's incarceration from January 31, 2011, through February 11, 2011, demonstrate that when he was booked-in to the jail Plaintiff denied that he needed medical attention. *See* Doc. 71, Ex. M. The next document provided by Defendants after the "Medical Information" sheet prepared on January 31, 2011, is an undated complaint prepared

---

[8]   Plaintiff fails to provide reliable dates for several of the incidents giving rise to the constitutional violations alleged in the Complaint.  For example, in Count XII, Plaintiff alleges that Defendants Clymer and Fenton engaged in a "rampage" at his home on February 10, 2011.  *See* Doc. 1 at 19. However, jail records demonstrate that Plaintiff was in custody at PCJ on February 10, 2011.  *See* Doc. 71, Ex. Q.  Similarly, in Count VI, Plaintiff alleges that he was assaulted by other inmates at PCJ on February 12, 2011, and that he was placed in an "isolation cell" until he was "healed up." *See* Doc. 1 at 10-11.  However, jail records demonstrate that he was released from custody on February 11, 2011.  *See* Doc. 71, Ex. Q.  He was not booked-in again until March 29, 2011.  *See* Doc. 71, Ex. R.  Also, in Count I, Plaintiff claims that he arrived at his home on August 30, 2010, during an allegedly illegal search and seizure.  *See* Doc. 1 at 6.  However, Plaintiff was in custody at PCJ on August 30, 2010.  *See* Doc. 71, Ex. A.

by Plaintiff on a form provided by Pawnee County Sheriff's Office.  *See id.*, Ex. N.  On that form,

Plaintiff complained of several ailments, including that he had "no feeling in my left hand to my

wrist because of the handcuffs the officer used during the search, I can't hold [illegible] . . . it is

bad." *Id.*  Plaintiff was released on bond on February 11, 2011, or only 12 days after having been

booked-in to PCJ. When Plaintiff was given a comprehensive examination by Charles O'Leary at

the Hominy Family Medical Center on May 31, 2011, there was no mention of pain or lack of

feeling in Plaintiff's wrists or hands. *Id.*, Ex. PP.  However, attached to the Complaint is a grievance,

dated June 12, 2011, which again requested immediate medical attention for lack of feeling in one

of Plaintiff's hands.  *See* Doc. 1 at 56.  Plaintiff also maintained a "Daily Encounter Log" for part

of the time he was in custody at PCJ and has attached it to his Complaint. *See id.* at 74-84.  In an

entry dated June 10, 2011, Plaintiff wrote: "accused of endeavoring to manufacture again, door

kicked in, salt, coffee filters, and a cut piece of TV coaxial cable taken from my T.V. Arrested, taken

to jail, Rebekah Kellogg was coerced into writing a statement that she threw trash in dumpster down

alley." *Id.* at 84.  Plaintiff does not mention pain in his hands from tight handcuffs anywhere in his

"Daily Encounter Log."  In addition, when he was booked-in to PCJ on June 12, 2011, he stated that

he did not need immediate medical attention and nothing in that record reflects an injury to

Plaintiff's wrists or hands whether from tight handcuffs or any other source.  *See* Doc. 71, Ex. NN.

Lastly, Defendants have provided Plaintiff's medical records from ODOC for the period

immediately after his transfer from PJC.  *Id.*, Exs. JJJ-PPP.  There is no entry in those records

reflecting a complaint of "permanent injury" to his hands attributable to tight handcuffs.  Instead,

upon examination of Plaintiff, the ODOC physicians noted "normal" for Plaintiff's musculoskeletal and neurological systems.[9] *Id.*, Exs. KKK and OOO.

Based on those records, the Court finds that, given the short periods of Plaintiff's various episodes of incarceration at PCJ, coupled with Plaintiff's brief and inconsistent pattern of mentioning pain or lack of feeling in his hands, any failure to provide medical care for injury resulting from handcuffing did not rise to the level of a constitutional violation. Plaintiff has failed to demonstrate that any defendant acted with deliberate indifference to a serious medical need with regard to an alleged wrist or hand injury. Because there is no genuine issue of material fact with regard to Plaintiff's allegation of inadequate medical care as stated in Count XI, Defendant Shaw is entitled to judgment as a matter of law and her motion for summary judgment is granted as to Count XI.

In Count XV, Plaintiff claims to have suffered a heart attack on June 24, 2011, as a result of Defendant Shaw's refusal to provide his seizure medication. *See* Doc. 1 at 22-23. He states he was taken to Cushing Regional Hospital via ambulance where he was stabilized. *Id.* Contrary to Plaintiff's allegation, the medication log maintained by the Pawnee County Sheriff's Office demonstrates that Petitioner was in fact given one of his seizure medications, gabapentin, every day from June 17, 2011, until his discharge on August 23, 2011, except for June 24, 2011. *See* Doc. 71, Ex. RR. The summary judgment record provided by Defendants also demonstrates that on July 1, 2011,[10] Plaintiff was transported via EMS to Cushing Regional Hospital suffering "chest pain panic

---

[9]   In an assessment of Plaintiff's mental health, signed August 24, 2011 -- one day after his release from PCJ -- Kathryn Boyd, PhD, conducted a mental health screening interview and wrote that Plaintiff was "med seeking, blaming others for problems, hx of acting out." Doc. 71, Ex. JJJ.

[10]   The transport record is mistakenly dated "June 31, 2011." *See* Doc. 71, Ex. TT.

attack." *Id.*, Ex. TT.  The After Care Instructions provided at the time of discharge on July 1, 2011, stated, inter alia, "[y]ou have been seen in the Emergency Department with chest pain, however, the cause in not yet known." *Id.*, Ex. UU.  Plaintiff has failed to provide any evidence supporting his claim that he suffered a "heart attack" as a result of not being provided his seizure medication. Because Plaintiff was in fact given seizure medication during the relevant time period and because there is nothing linking Plaintiff's chest pain to the medications given at PCJ, the Court finds that Plaintiff has failed to demonstrate that Defendant Shaw acted with deliberate indifference to a serious medical need with regard to the chest pain incident. There is no genuine issue of material fact as to Count XV. Therefore, Defendant Shaw is entitled to summary judgment as to Count XV.

### b.  Failure to protect

The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). While the conditions under which a convicted prisoner is held are subject to scrutiny under the Eighth Amendment, the conditions under which a pretrial detainee is confined are scrutinized under the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). "Although the Due Process clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted). "The Eighth Amendment requires jail officials to provide humane conditions of confinement by

25

ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Id.* (quotation omitted).

An inmate claiming that officials failed to insure his safety "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Plaintiff must also demonstrate that the officials had a "sufficiently culpable state of mind," that is, their acts or omission arose from "deliberate indifference to inmate health or safety." *Id.* at 835-47 (explaining that deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other"). A prison official is not liable for unsafe conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.   An official's failure to alleviate a significant or obvious risk that he should have perceived but did not, while no cause for commendation, does not constitute a violation of the Eighth Amendment. *Id.* at 838. Negligence on the part of prison officials does not constitute deliberate indifference. Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In Count VI, Plaintiff alleges that, "on approx. 02/12/11,"[11]  a fellow inmate observed a "star" beside Plaintiff's name and was told by a jailer that the star meant "Plaintiff had AIDS." *See* Doc. 1 at 10. According to Plaintiff, that inmate proceeded to tell all of the other inmates in the cell that Plaintiff had AIDS and caused Plaintiff to be beaten, kicked and stomped.  *Id.* Plaintiff further

---

[11]    Jail records provided by Defendants demonstrate that Plaintiff was released from custody on February 11, 2011.  *See* Doc.  71, Ex. Q.

claims that Defendant Shaw and a jailer named Ryan Hammons[12] watched for "approximately 1 ½ minutes" before intervening to stop the assault. *Id.* Plaintiff claims he sustained multiple contusions, black eyes and head trauma, and that he was placed in an isolation cell without being provided medical care for his injuries.  Plaintiff also complains that he was moved from the isolation cell to an overcrowded cell.  *Id.* at 11.

As discussed above, Plaintiff attaches numerous records to his Complaint.  He includes a grievance, dated February 4, 2011. *See* Doc. 1 at 47. There, Plaintiff claims that he was threatened by other inmates housed in the bullpen after they were told by another inmate that Plaintiff had HIV. In light of those threats, Defendant Shaw moved Plaintiff to isolation. *Id.* at 48. Plaintiff did not claim in that grievance, as he does in his civil rights Complaint, that Defendant Shaw stood by and watched as he was assaulted and injured.  In addressing Plaintiff's claim that he was assaulted at the PCJ, Sheriff Waters states in the Special Report that "[i]f there had been an inmate assault or fight in the Jail that had been observed by Jail staff, a Jail incident report would have been created." *See* Doc. 70 at 17.  In her supporting affidavit, Defendant Shaw states that "[t]here is no Jail incident report involving Tobin Lemmons for the period of August 27, 2010, to August 23, 2011, that in [any] way references an inmate assault of Lemmons." *See* Doc. 71, Ex. 9 at ¶ 48.  The lack of an incident report, as described by Defendant Shaw, is consistent with the version of events supplied by Plaintiff in his own grievance where there is no allegation of an assault with resulting injuries. Therefore, the Court finds there is no genuine issue of material fact as to the Count VI claim that Defendant Shaw failed to intervene to stop other inmates from assaulting Plaintiff.

---

[12]   Ryan Hammons is not a named defendant, nor does the record include any sworn statement by Ryan Hammons as a witness to the alleged assault.

As to Plaintiff's claim that Defendant Shaw placed him in an isolation cell, Defendant Shaw admits that, at times, Plaintiff was placed alone in a cell, but those instances were for his own protection. *See id.*, Ex. 9 at ¶ 49.  For example, Shaw explains that because "Lemmons made racial remarks against Native American inmates . . . he could not be housed with most Native American inmates. *Id.* Lemmons was also loud and disruptive and inmates complained that they would not be housed with him."[13] *Id.*. The record before the Court demonstrates that Defendant Shaw took steps to protect Plaintiff when he was threatened by other inmates. In addition, Plaintiff does not controvert the summary judgment evidence provided by Defendants.  Therefore, Defendant Shaw is entitled to judgment as a matter of law and her motion for summary judgment is granted as to Count VI.

### c.  Access to courts

In Count VII, Plaintiff claims that Defendant Shaw refused to send legal documents to a court and that as a result, he lost "an employee assault lawsuit against Corrections Corporation of America."  *See* Doc. 1 at 11-12. He further claims that, unlike other inmates at the PCJ, he was denied phone calls, access to a notary, and access to copy preparation, allegedly because of the pendency of this federal lawsuit.  *Id.* at 12. Plaintiff alleges that when Defendant Shaw was yelling at him "right up in his face," he smelled alcohol on her breath. *Id*.

"The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with

---

[13]    Jail records contain support for Defendant Shaw's statements concerning Plaintiff's hostility towards Native Americans. In a request for mental health treatment, Plaintiff answered "hell no" in response to the question, "Are you Native American?" *See* Doc. 71, Ex. H. When asked if he received or was eligible to receive tribal benefits, Plaintiff wrote "hell no white boy." *See id*.

adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Significantly, however, an inmate alleging a violation of constitutional access to the courts "must show actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (per curiam) (interpreting *Lewis*). For example, an inmate cannot bring a constitutional access to the court claim simply because that person's prison law library is subpar. *See Lewis*, 518 U.S. at 351. Rather, such an inmate "must go one step further and demonstrate that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim." *Id.* Furthermore, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Bounds*, 430 U.S. at 824-25. Significantly, the constitutional concept of an inmate's right of access to the courts does not require prison officials to provide the inmate with free or unlimited access to a photocopying machine, *Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980), nor does it require unlimited free postage. *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir. 1978).

Here, Defendant Shaw admits refusing to send a package for Plaintiff because he had insufficient funds to purchase postage, but it was to be sent to his parents, not to a court. *See* Doc. 71, Ex. 9 at ¶ 51. Plaintiff fails to offer evidence controverting Defendant Shaw's averment that she refused to send a package to his parents, not to a court. To the extent Plaintiff claims that Defendant Shaw violated his constitutional right to access the court by refusing to mail legal documents to a court with regard to a lawsuit against Corrections Corporation of America (CCA), Plaintiff fails to controvert Defendant's evidence demonstrating that he had no pending lawsuit against CCA during the period of time at issue in this lawsuit. Records provided by Defendants demonstrate that

Plaintiff's legal actions against CCA were terminated years in advance of his periods of incarceration at PCJ at issue in this case.   *See* Doc. 74, Exs. 1, 2, 3.  Nothing in the record suggests that the actions of Defendant Shaw deprived Plaintiff of his constitutional right to access the court. Because there is no genuine issue of material fact with regard to Count VII, Defendant Shaw is entitled to judgment as a matter of law and her motion for summary judgment is granted as to Count VII.

### d.  Missing personal property and attempt to steal check

As part of Count IX, Plaintiff claims that Defendant Shaw attempted to steal a $500.00 check that had been delivered by Plaintiff's father for deposit into Plaintiff's account. *See* Doc. 1 at 15-16. In Count X, Plaintiff claims that on February 10, 2011, upon his release from PJC, items of personal property were missing, including an 18 kt. gold chain that "contained my grandmother's and grandfather's ashes," along with a 38 gram 22 kt. gold flex bracelet. *See id.* at 16-17. He alleges that Defendant Shaw had booked him into the PCJ and that when he claimed his personal property was missing, Defendant Shaw "began cussing me in front of my bondsman, I as well smelled alcohol on her breath, again." *Id.*  at 17. He further alleges that 21 of his "pills" were missing along with a black leather trench coat. *Id.*  Defendant Shaw claims that all of Plaintiff's personal property was returned to him.  *See* Doc. 71, Ex. 9 at ¶ 55.

Plaintiff fails to provide any factual support for a claim that he has been deprived of property in violation of the constitution. To the extent Plaintiff seeks return of or compensation for any lost property, the Court nonetheless finds that he is not entitled to either return of or reimbursement for property in this federal civil rights action. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (barring section 1983 suits alleging intentional, as well as negligent, deprivations of property without due

process); *see also Durre v. Dempsey*, 869 F.3d 543, 546 (10th Cir. 1989). Plaintiff had a post-deprivation remedy in the form of a replevin action based on contract in the Oklahoma state courts.[14] *See Gibson v. Copeland*, 13 P.3d 989, 991–92 (Okla. Ct. App. 2000); *see also* Okla. Stat. tit. 12, § 1751(A)(2) (2012). Plaintiff does not allege that such remedy was unavailable or deficient. Therefore, Plaintiff's request for return of or reimbursement for property fails to state a claim upon which relief may be granted in this § 1983 action.  The Count IX claim against Defendant Shaw and Count X are dismissed without prejudice.

### e.  Conditions of confinement at PCJ

In Count XIV, Plaintiff describes the conditions at the PCJ as inhumane. *See* Doc. 1 at 21-22. He identifies black mold infested cells, showers, mattresses causing lung and allergen problems. *Id.* He alleges that he and other inmates "are forced to live on the floor with leaking toilets, laying in feces and urine," that there are "rodent feces in the food that is served unsanitarily without proper handling, hairnets, nor gloves used, no wash stations, cockroaches also climbing all over the food." *Id.*  He also complains that there is no dietician on staff on the PCJ. He asserts these claims against Defendant Shaw, and argues that the deprivations violated his constitutional rights. *Id.*

In seeking summary judgment on this claim, Defendant Shaw states that Plaintiff was incarcerated in the "old" PCJ which was built in 1932.[15] *See* Doc. 71, Ex. 9 at ¶ 61. Shaw acknowledges that, at times, the old jail had plumbing problems which were promptly fixed. *Id.* She

---

[14]    Plaintiff is familiar with a replevin action.  In Pawnee County District Court, Case No. CV-2011-12, Plaintiff sought return of $2,930.00 seized as drug proceeds. *See* Doc. 70, Ex. 6.  That action was dismissed, *id.*, Ex. 7, after $2,930.00 was returned to Plaintiff and deposited in his inmate account, *id.*, Ex. 8.

[15]    A new jail has been constructed and began housing inmates in February 2012. *See* Doc. 71, Ex. 9 at ¶ 61.

denies, however, Lemmons' allegations that inmates were forced to live on the floor and lay in feces and urine. *Id.* In addition, Shaw admits that, at times, the old jail was overcrowded, but that jail officials "made every effort" to manage the inmate population. *Id.* at ¶ 62. Also, Shaw states that the jail was inspected regularly by the State Jail Inspector's Office who never advised of a black mold problem, that there were no rodents or rodent feces in the cells or on food, and that food preparers at the jail wear gloves and hairnets. *Id.* at ¶¶ 63, 64. In response to Defendant Shaw's motion for summary judgment, Plaintiff reasserts his claims, including that the jail was overcrowded, that there was "black mold," and that "there were rodents, rodent feces, boweevils [sic], cockroaches in the food." *See* Doc. 92 at 14.

Even if Plaintiff has accurately described the conditions of his confinement at the PCJ, he is not entitled to the remedy he seeks: money damages. The Prison Litigation Reform Act (PLRA) precludes recovery of money damages for a conditions of confinement claim in the absence of a showing of physical injury. *See* 42 U.S.C. § 1997e(e) (providing that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). In his Complaint, Plaintiff does not allege that he has suffered any physical injury as a result of the conditions of his confinement at the PCJ as alleged in Count XIV. Therefore, he is not entitled to the relief sought for the constitutional violations alleged in Count XIV. *See Searles v. Van Bebber*, 251 F.3d 869,  876 (10th Cir. 2001). Count XIV is dismissed without prejudice for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1997e(e).

####     f.  Racism

In Count XVI,[16] Plaintiff claims that he has experienced "racism" at the PCJ. *See* Doc. 1 at

23. Although Plaintiff does not identify his race, it is apparent, based on his allegations, that he is

not Native American. He claims that:

> Defendant Jerri Shaw only allows Native American Indians to be on trustee status.
> There are no white or any other trustees only Indians and sex offenders. She allows
> prisoners that are Native American Indians to make phone calls, bust the televisions,
> lights, commit arson of county property, then punishes all the other prisoners
> including the women by feeding us beans and rice in the mornings, when a white
> prisoner proceeds to act out they are placed in isolation cell and left, this Plaintiff has
> personally been placed in iso several times for cussing her back, a cell that has no
> cold running water or shower for weeks on end.

*Id.*

In her affidavit supporting her request for summary judgment, Defendant Shaw denies

providing preferential treatment to any inmate based on his/her race or national origin. *See* Doc. 71,

Ex. 9 at ¶ 57.  Defendant Shaw explains that her decisions concerning trustees are based on an

inmate's "behavior in Jail, the charges which are pending against him/her, the duties the inmate can

perform, and the inmate's hygiene and health condition." *Id.* Also, as discussed above, Shaw states

that Plaintiff had to be housed alone at times for his own safety and protection because he "made

racial remarks against Native American inmates." *Id.* at ¶ 49. In his response to Defendant Shaw's

motion for summary judgment, Plaintiff does not dispute or controvert Defendant Shaw's averments

with regard to this claim. *See* Doc. 92.

The Court finds that Plaintiff's claim is conclusory and fails to state a claim upon which

relief may be granted. Article III of the United States Constitution requires that a plaintiff have

---

[16]    Although this count is unnumbered in the Complaint, the Court identifies it as Count XVI.

standing to invoke federal jurisdiction. Article III standing is present only when (1) a plaintiff suffers a concrete, particularized injury which is actual or imminent; (2) there is a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Without a concrete, personal injury that is not abstract and that is fairly traceable to the government conduct that [plaintiff] challenges as unconstitutional, [plaintiff] lacks standing." *Cato v. United States*, 70 F.3d 1103, 1109 (9th Cir. 1995) (citation omitted). Plaintiff's allegations of generalized injury caused by racial discrimination attributed to Defendant Shaw are insufficient to state a claim. *See id.* (finding no individual standing for generalized, class-based injury to African Americans caused by racial discrimination). Count XVI is dismissed without prejudice for failure to state a claim upon which relief may be granted based on lack of standing.

## D. Counts IX and XII against Defendant Keith Hammons

Plaintiff alleges in Count IX that, during an illegal search and seizure at his home, Defendant Keith Hammons stole $2,000 out of Plaintiff's wallet. *See* Doc. 1 at 15. In Count XII, he states that he unsuccessfully tried to file formal charges against Defendant Hammons for the "theft of $2,000 from my wallet." *Id.* at 19. Plaintiff cites his right to be free from an illegal seizure as the constitutional basis for his claims against Defendant Hammons. *Id.* Defendant Hammons filed an answer (Doc. 72), denying that he "stole any item or money from Plaintiff" or violated any of Plaintiff's constitutional rights. He also lists affirmative defenses, including qualified immunity. *Id.* However, no dispositive motion was filed by Defendant Hammons with regard to the allegations contained in Counts IX and XII. Therefore, within thirty (30) days of the entry of this Order, Defendant Hammons may file a motion for summary judgment with regard to Plaintiff's allegations

34

against him as asserted in Counts IX and XII.  In the event Defendant Hammons files a motion for

summary judgment, Plaintiff shall file a response within 21 days from the date the motion is filed.

Failure to file a response authorizes the Court, in its discretion and upon notice to Plaintiff, to deem

the motion confessed. *See* LCvR7.2(f). Defendant may file a reply within 14 days after the due date

of the response.

### E.  Count XI claim against Defendant Stout

In Count XI, Plaintiff claims that during one of the searches of his home, he

was slammed down to the ground and straigt [sic] cuffs were clamped down so tight
on both wrists that I now have permanant [sic] damage to both my wrists as a result
of disorderly conduct. Ofc. Stout stated "he hoped my hands rotted off, piece a shit,"
and proceeded to cinch the straight cuffs even tighter around my wrists cutting off
the circulation to my hands.

*See* Doc. 1 at 17-18. Defendant Stout filed a partial answer (Doc. 76), denying the allegations of

wrongdoing contained in Count XI.  Defendant Stout also signed an Affidavit (Doc. 70, Ex. 2),

denying that he cinched Plaintiff's handcuffs too tightly.  Defendants Fenton and Clymer also filed

Affidavits denying that they cinched Plaintiff's handcuffs too tightly and averring that they did not

observe any other law enforcement personnel cinch his handcuffs too tightly. *See id.*, Exs. 1 and 3.

However, no dispositive motion was filed with regard to Count XI. Defendant Stout may file a

motion for summary judgment with regard to Plaintiff's allegations against him as asserted in Count

XI.  In the event Defendant Stout files a motion for summary judgment, Plaintiff shall file a response

within 21 days from the date the motion is filed. Failure to file a response authorizes the Court, in

its discretion and upon notice to Plaintiff, to deem the motion confessed. *See* LCvR7.2(f). Defendant

may file a reply within 14 days after the due date of the response.

35

**F.  Count XII claim against Defendants Clymer and Fenton**

In Count XII, Plaintiff alleges that his constitutional right to be free of an illegal seizure was violated when, during the February 10, 2011,[17] search of his home, Defendants Clymer and Fenton "stomped and destroyed" his home security system, cameras, monitory, and continuous feed recording equipment. *See* Doc. 1 at 18.  He also alleges that antique jewelry, diamonds, gold, and approximately $250,000 in cash and jewelry were stolen by Defendants Clymer and Fenton during their "rampage." *Id.* at 19. Defendants Fenton and Clymer filed "partial answers" (Docs. 77, 78) denying the allegations against them in Count XII.

"Excessive or unnecessary destruction of property" can render police conduct unreasonable under the Fourth Amendment, even though the entry itself is lawful. *See United States v. Tueller*, 349 F.3d 1239, 1245 (10th Cir. 2003) (quoting *United States v. Ramirez*, 523 U.S. 65, 71 (1998)). No dispositive motion was filed with regard to Count XII. Therefore, Defendants Clymer and Fenton may file a motion for summary judgment with regard to Plaintiff's allegations against them as asserted in Count XII.  In the event Defendants Clymer and Fenton file a motion for summary judgment, Plaintiff shall file a response within 21 days from the date the motion is filed. Failure to file a response authorizes the Court, in its discretion and upon notice to Plaintiff, to deem the motion confessed. *See* LCvR7.2(f). Defendants may file a reply within 14 days after the due date of the response.

---

[17]    Records provided by Defendants demonstrate that Plaintiff was in custody at PCJ on February 10, 2011. *See* Doc. 71, Ex.  Q (reflecting that Plaintiff was released on February 11, 2011 at 21:14). However, Plaintiff states that the date of this search and seizure is approximate.

## G. Plaintiff's motions

### 1. Motion to deny motions

In his motion to deny motion to dismiss/alternate summary judgment (Doc. 97), Plaintiff requests that Defendants' dispositive motions be denied, that counsel be appointed to represent him, and that this case be stayed until he is released from prison.  He argues that counsel should be appointed to assist him with the "voluminous" case at bar and that he should be allowed to engage in discovery to obtain affidavits from fellow inmates. *Id.*  Defendants filed a response (Doc. 98) to Plaintiff's motion. First, Plaintiff's separate motion requesting that Defendants' dispositive motions be denied is unnecessary. In addition, Plaintiff filed responses to Defendants' dispositive motions setting forth arguments supporting his position that the dispositive motions should be denied. Lastly, affidavits from fellow inmates would not alter the outcome of the Court's rulings on Defendants' dispositive motions.[18] The Court denies all relief sought in Plaintiff's "motion to deny motions."

### 2. Motion for release of documents

In his motion for release of documents (Doc. 102), Plaintiff requests that the Court enter an order directing Dr. Erin Trippy to release Plaintiff's medical records.  Defendants filed a response (Doc. 104) to Plaintiff's motion.  Plaintiff, in effect, seeks to engage in discovery.  However, the Court has not authorized discovery. In addition, Plaintiff has failed to allege any fact suggesting that

---

[18]     Plaintiff does not allege that his fellow inmates witnessed the actions of law enforcement officials giving rise to claims raised in Count I.  In addition, even if fellow inmates corroborated Plaintiff's allegations concerning the medical care received by Plaintiff and the conditions of confinement at PCJ, which the record does not reflect (*see* footnote 12, *supra*), Defendant Shaw would be entitled to summary judgment for the reasons discussed herein.

additional records are necessary to resolve the medical care issues raised in the Complaint. Plaintiff's motion to release documents is denied.

### 3. Motion to reconsider appointment of counsel

In his motion to reconsider appointment of counsel, Plaintiff complains that he has "no access to his witnesses and their affidavits to further re-fute the defendants' denial of any wrongdoing." *See* Doc. 103. Plaintiff also continues to allege that defendants have destroyed documents or otherwise altered the record. *Id.* Defendants filed a response to Plaintiff's motion to reconsider. *See* Doc. 105. Upon review of the Court's prior orders denying Plaintiff's request for appointment of counsel, *see* Docs. 6, 41, 61, in light of Plaintiff's motion to reconsider, the Court finds no basis for reconsidering the prior rulings. For that reason, Plaintiff's motion to reconsider is denied.


**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The motion to dismiss filed by Defendants Waters and Adams (Doc. 73) is **granted**.

2. The partial motion to dismiss (Doc. 75) filed by Defendants Fenton, Clymer, and Stout as to Count I is **granted**. The claims raised in Count I are **dismissed without prejudice**.

3. The alternative partial motion for summary judgment (Doc. 79) filed by Defendants Fenton, Clymer, and Stout as to Count I is **declared moot**.

4. The motion to dismiss or in the alternative for summary judgment filed by Defendant Jerri Shaw (Doc. 74) is **granted** as follows:

    a.    The motion to dismiss is **granted** as to Counts IX, X, XIV, and XVI.  Those counts are **dismissed without prejudice** for failure to state a claim upon which relief may be granted.

    b.    The motion for summary judgment is **granted** as to Counts II, III, IV, V, VI, VII, XI, and XV.

5.    Plaintiff's motion to deny motions (Doc. 97) is **denied**.

6.    Plaintiff's motion for release of documents (Doc. 102) is **denied**.

7.    Plaintiff's motion to reconsider (Doc. 103) is **denied**.

8.    Within thirty (30) days of the entry of this Order, Defendant Hammons may file a motion for summary judgment with regard to Plaintiff's allegations against him as asserted in Counts IX and XII of the Complaint (Doc. 1).

9.    Within thirty (30) days of the entry of this Order, Defendant Stout may file a motion for summary judgment with regard to the excessive use of force claim contained in Count XI of the Complaint (Doc. 1).

10.    Within thirty (30) days of the entry of this Order, Defendants Clymer and Fenton may file a motion for summary judgment with regard to Plaintiff's allegations against them as asserted in Count XII of the Complaint (Doc. 1).

11.    In the event of Hammons, Stout, Clymer and Fenton's filing of motion(s) for summary judgment, Plaintiff shall file responses within 21 days from the date the motions are filed. Failure to file a response authorizes the Court, in its discretion and upon notice to Plaintiff, to deem the motion confessed.

12.     In the event Plaintiff files responses, Defendants may file replies within 14 days after the due

date of the responses.

DATED THIS 10th day of October, 2013.


JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE