IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

TOBIN DON LEMMONS, )
)
        **Plaintiff,** )
)
vs. ) Case No. 11-CV-500-JED-PJC
)
MIKE WATERS, Sheriff; et al., )
)
        **Defendants.** )

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action filed by Plaintiff, Tobin Don Lemmons, a state prisoner appearing *pro se*. Before the Court are the motion for summary judgment (Doc. 118) filed by Defendants Clymer, Fenton, and Stout, and the motion for summary judgment (Doc. 119) filed by Defendant Hammons. Plaintiff filed a response (Doc. 124) and Defendants filed replies (Doc. 126, 127). For the reasons discussed below, Defendants' motions are granted.

## *PROCEDURAL BACKGROUND*

In his lengthy Complaint (Doc. 1), Plaintiff identifies sixteen counts challenging multiple searches and seizures conducted at his home by law enforcement officials, the adequacy of medical care provided at the Pawnee County Jail (PCJ), and the conditions of his relatively brief periods of confinement at PCJ. In the Order directing service of process and preparation of a Special Report, *see* Doc. 32, the Court dismissed without prejudice Counts VIII and XIII for failure to state a claim upon which relief may be granted. On October 10, 2013, the Court granted the motion to dismiss filed by Defendants Waters and Adams; granted the partial motion to dismiss filed by Defendants Fenton, Clymer, and Stout as to Count I and dismissed without prejudice the claims raised in Count I; declared moot the alternative partial motion for summary judgment filed by Defendants Fenton, Clymer, and Stout as to Count I; granted the motion to dismiss or in the alternative for summary

judgment filed by Defendant Jerri Shaw; denied Plaintiff's motions to deny motions, for release of documents, and to reconsider; afforded Defendant Hammons the opportunity to file a motion for summary judgment with regard to Plaintiff's allegations against him as asserted in Counts IX and XII of the Complaint; afforded Defendant Stout the opportunity to file a motion for summary judgment with regard to the excessive use of force claim contained in Count XI of the Complaint; and afforded Defendants Clymer and Fenton the opportunity to file a motion for summary judgment with regard to Plaintiff's allegations against them as asserted in Count XII of the Complaint. *See* Doc. 111. As stated above, Defendants Clymer, Fenton, Stout, and Hammons filed motions for summary judgment (Docs. 118, 119).

*FACTUAL BACKGROUND*

In the prior Opinion and Order, the Court provided a summary of Plaintiff's claims. *See* Doc. 111 at 2-4. The claims addressed herein concern the degree of force used to handcuff Plaintiff during one of his arrests and the alleged destruction and loss of property during his arrests. When Plaintiff filed his Complaint (Doc. 1) on August 11, 2011, he was a prisoner in custody at PCJ, located in Pawnee Oklahoma. Prior to filing this action, Plaintiff was convicted, on his pleas of guilty entered in multiple Pawnee County District Court criminal cases. First, on September 30, 2010, Petitioner pled guilty to Unlawful Possession of Methamphetamine in Case No. CF-2010-95. Thereafter, on July 15, 2011, he pled guilty to Unlawful Possession of Marijuana, Unlawful Possession of Drug Paraphernalia, and Destroying Evidence in Case No. CF-2011-21; Endeavoring to Manufacture Methamphetamine, Unlawful Possession of Marijuana With Intent to Distribute, and Unlawful Possession of Methamphetamine in Case No. CF-2011-43; Maintaining a Place for Keeping/Selling Drugs in Case No. CF-2011-64; and Endeavoring to Manufacture

2

Methamphetamine and Possession of Marijuana in Case No. CF-2011-94. He is now in custody of the Oklahoma Department of Corrections (ODOC) serving concurrent sentences totaling fifteen (15) years.

As to the Complaint filed in this case, the Court previously noted that

> Plaintiff's handwritten Complaint (Doc. 1) is far from a model of clarity. His handwriting is small and almost illegible. However, it appears that Plaintiff's claims arise from (1) searches and seizures of his home conducted by the Pawnee County Drug Task Force on August 20, 2010, February 10, 2011, and July 11, 2011; (2) the medical care provided at the PCJ; and (3) conditions of confinement at the PCJ. In his original Complaint, Plaintiff identifies approximately sixteen (16) counts.

*See* Doc. 32. In that same Opinion and Order, the Court dismissed Counts VIII and XIII for failure to state a claim upon which relief may be granted and, as to the remaining claims, directed service of process by the U.S. Marshal. *See id.*

As noted above, the only claims remaining for disposition are those raised in Counts IX, XI, and XII. In Counts IX and XII, Plaintiff alleges that Defendant Hammons violated his constitutional rights when he stole $2,000 from Plaintiff during the course of Plaintiff's arrest. *See* Doc. 1 at 14-16, 18-19. In Count XI, Plaintiff claims that Defendant Stout violated his constitutional right to be free from cruel and unusual punishment by "cinching" his handcuffs too tightly, thereby causing permanent damage to both wrists and hands. *See id.* at 17-18. Lastly, in Count XII, Plaintiff claims that Defendants Fenton and Clymer violated his constitutional rights when they "stomped and destroyed" surveillance equipment and stole jewelry, gold, and cash, worth $250,000, from his safe during a search of his residence on February 10, 2011. *See id.* at 18-19. Plaintiff seeks compensatory damages. *Id.* at 7.

## ANALYSIS

**A. Summary judgment standard**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

4

### B. Defendants' dispositive motions

#### 1. Defendants Fenton, Clymer, and Stout

##### a. Count XI

In Count XI, Plaintiff claims that, during one of the searches of his home, he suffered "disorderly conduct" at the hands of Defendant Stout. Doc. 1 at 17-18. Specifically, Plaintiff claims, as follows:

> [He] was slammed down to the ground and straigt [sic] cuffs were clamped down so tight on both wrists that I now have permanant [sic] damage to both my wrists as a result of disorderly conduct. Ofc. Stout stated "he hoped my hands rotted off, piece a shit," and proceeded to cinch the straight cuffs even tighter around my wrists cutting off the circulation to my hands.

*See* Doc. 1 at 17-18. Plaintiff also alleges that he complained and requested medical attention, but his request was denied, resulting in "permanent damage too [sic] both hands." *Id.* at 18. In response to the complaint, Defendant Stout filed a partial answer (Doc. 76), denying the allegations of wrongdoing contained in Count XI. Defendant Stout also signed an Affidavit (Doc. 70, Ex. 2), denying that he cinched Plaintiff's handcuffs too tightly. Defendants Fenton and Clymer also filed Affidavits denying that they cinched Plaintiff's handcuffs too tightly and averring that they did not observe any other law enforcement personnel cinch his handcuffs too tightly. *See id.*, Exs. 1 and 3. In his motion for summary judgment, Defendant Stout denies "cinching" Plaintiff's handcuffs too tightly and argues that "Plaintiff's excessive force claim against Defendant Stout is unfounded." *See* Doc. 118 at 2, 6. In addition, Defendant Stout argues that Plaintiff has not demonstrated that he suffered an actual injury that was not *de minimis*. *Id.* at 7.

Defendant Stout's use of force against Plaintiff is analyzed under the Fourth Amendment which guarantees citizens the right to be free from unreasonable searches and seizures. *Graham v.*

*Connor*, 490 U.S. 386, 388 (1989); *Terry v. Ohio*, 392 U.S. 1, 8 (1968). The Fourth Amendment standard governing excessive force claims is well settled. "[L]aw enforcement officers must be 'objectively reasonable' in their searches and seizures." *Dixon v. Richer*, 922 F.2d 1456, 1461 (10th Cir. 1991). According to the Supreme Court,

> Determining whether force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . . The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

*Graham*, 490 U.S. at 396 (alterations, citations, and quotations omitted). When determining the reasonableness of the officers' actions, three nonexclusive factors are considered: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by fleeing. *Id.* While it is true that "proof of physical injury manifested by visible cuts, bruises, abrasions or scars, is not an essential element" in excessive force cases, actual harm, either mental or physical, is required. *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (concluding the injury was insufficient to support an excessive force claim where defendants allegedly ignored pleas that handcuffs were too tight where the only evidence in the record was affidavit asserting that the handcuffs left red marks that were visible for days); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001) ("[T]he interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy

6

interests – a person's 'sense of security' and individual dignity."). In handcuffing cases, "a plaintiff must establish some non-de minimis actual injury." *Fisher v. City of Las Cruces*, 584 F.3d 888, 898 (10th Cir. 2007).

Although the date of the alleged handcuffing incident is not clear,[1] Defendant Stout acknowledges that he was present on various occasions in 2010 and 2011 when Plaintiff was arrested. (Doc. 118 at 7). Only two documents in the record reference the handcuffing incident. First, in an undated document prepared by Plaintiff on a form provided by the Pawnee County Sheriff's Office, *see* Doc. 71, Ex. N, Plaintiff complained of several ailments, including that he had "no feeling in my left hand to my wrist because of the handcuffs the officer used during the search, I can't hold [illegible] . . . it is bad." *Id.* Second, in a grievance, dated June 12, 2011, written in relatively clear handwriting, Plaintiff stated "I need immediate medical attention. I was placed in straight cuffs cinched down so tight they cut the circulation off from my hands, it's caused me to have no feeling in my hand. I was placed in them for 4 plus hours." *See* Doc. 1 at 56.[2]

---

[1] As summarized in the prior Opinion and Order (Doc. 111 at 22 n.8), Plaintiff fails to provide reliable dates for several of the incidents giving rise to the constitutional violations alleged in the Complaint. For example, in Count XII, Plaintiff alleges that Defendants Clymer and Fenton engaged in a "rampage" at his home on February 10, 2011. *See* Doc. 1 at 19. However, jail records demonstrate that Plaintiff was in custody at PCJ on February 10, 2011. *See* Doc. 71, Ex. Q. Similarly, in Count VI, Plaintiff alleges that he was assaulted by other inmates at PCJ on February 12, 2011, and that he was placed in an "isolation cell" until he was "healed up." *See* Doc. 1 at 10-11. However, jail records demonstrate that he was released from custody on February 11, 2011. *See* Doc. 71, Ex. Q. He was not booked-in again until March 29, 2011. *See* Doc. 71, Ex. R. Also, in Count I, Plaintiff claims that he arrived at his home on August 30, 2010, during an allegedly illegal search and seizure. *See* Doc. 1 at 6. However, Plaintiff was in custody at PCJ on August 30, 2010. *See* Doc. 71, Ex. A.

[2] On this grievance, Plaintiff wrote "refused" in the space reserved "for office use only." (Doc. 1 at 56). Plaintiff also wrote "refused to respond or take/accept" on the grievance form. *Id.* This is one of five grievances attached to the complaint bearing similar notations written by Plaintiff. *Id.* at 56-60.

Other records demonstrate, however, that when he was booked-in to PCJ on both January 31, 2011 and June 12, 2011, Plaintiff denied that he needed immediate medical attention and nothing in those records suggests an injury to Plaintiff's wrists or hands, whether from tight handcuffs or any other source. *See* Doc. 71, Exs. M, NN. In addition, the record reflects that Plaintiff was released on bond on February 11, 2011, only 12 days after having been booked-in to PCJ on January 31, 2011. Thereafter, on May 31, 2011,[3] Charles O'Leary at the Hominy Family Medical Center gave Plaintiff a comprehensive physical examination and the progress notes from that examination contain no mention of complaints of pain or lack of feeling in Plaintiff's wrists or hands. *Id.*, Ex. PP. Significantly, Plaintiff also maintained a "Daily Encounter Log"[4] and has attached it to his Complaint. *See id.* at 74-84. In the final entry, dated June 10, 2011,[5] Plaintiff wrote: "accused of endeavoring to manufacture again, door kicked in, salt, coffee filters, and a cut piece of TV coaxial cable taken from my T.V. Arrested, taken to jail, Rebekah Kellogg was coerced into writing a statement that she threw trash in dumpster down alley." *Id.* at 84. While Plaintiff's entries in the log are detailed and specific, the "Daily Encounter Log" contains no mention of pain or numbness in his hands from tight handcuffs or any other source. Lastly, Defendants have provided Plaintiff's medical records from ODOC for the period immediately after his transfer from PJC. *See* Doc. 71, Exs. JJJ-PPP. Nothing in those records reflects a complaint of "permanent injury" to his hands

---

[3] Plaintiff was not in custody at the time of this comprehensive examination and no records reflecting wrist injuries of any sort were included within this record.

[4] The "Daily Encounter Log" includes entries for the time period from April 14, 2011, to June 10, 2011.

[5] This entry provides another example of an erroneous date cited by Plaintiff. He was not arrested and booked-in to PCJ until June 12, 2011. *See* Doc. 71, Ex. NN.

attributable to tight handcuffs.[6] Instead, upon examination of Plaintiff, the ODOC physicians noted "normal" for Plaintiff's musculoskeletal and neurological systems.[7] *Id.*, Exs. KKK and OOO.

Based on those records, the Court finds that Plaintiff has failed to demonstrate that he suffered a non-*de minimis* actual injury from the handcuffing incident. Only two records prepared by Plaintiff reflect complaints of injury attributable to handcuffing. Both appear to have been prepared close in time to his arrest. No record suggests that Plaintiff suffered more than a short-term, *de minimis* injury. Therefore, Plaintiff's alleged injury was insufficient to support an excessive force claim. Because there is no genuine dispute of material fact with regard to Plaintiff's claim of excessive use of force by Defendant Stout, as alleged in Count XI, Defendant Stout is entitled to judgment as a matter of law and his motion for summary judgment is granted as to Count XI.

**b. Count XII**

In Count XII, Plaintiff alleges that his constitutional right to be free of an illegal seizure was violated when, during the February 10, 2011,[8] search of his home, Defendants Clymer and Fenton "stomped and destroyed" his home security system, cameras, monitor, and continuous feed

---

[6] In response to Defendants' motion for summary judgment, Plaintiff claims that "DOC and his confining facility refuse to treat the Plaintiff for this and other illnesses Plaintiff is diagnosed with, and are conspiratorially helping the defendants litigate their lawsuit." (Doc. 124 at 6). Plaintiff's conspiracy allegation is conclusory, unsupported by the record, and is insufficient to overcome Defendant's motion for summary judgment. *See Berry v. Oklahoma*, 2011 WL 7637196, *5 (W.D. Okla. Oct. 11, 2011) (unpublished opinion cited for its persuasive value pursuant to 10th Cir. R. 32.1) (finding conclusory allegations of conspiracy insufficient to overcome motion for summary judgment).

[7] In an assessment of Plaintiff's mental health, signed August 24, 2011 -- one day after his release from PCJ -- Kathryn Boyd, PhD, conducted a mental health screening interview and wrote that Plaintiff was "med seeking, blaming others for problems, hx of acting out." Doc. 71, Ex. JJJ.

[8] As noted, records provided by Defendants demonstrate that Plaintiff was in custody at PCJ on February 10, 2011. *See* Doc. 71, Ex. Q (reflecting that Plaintiff was released on February 11, 2011 at 21:14).

recording equipment. *See* Doc. 1 at 18. He also alleges that antique jewelry, diamonds, gold, and cash, totaling approximately $250,000 in value, were stolen by Defendants Clymer and Fenton during their "rampage." *Id.* at 19. Defendants Fenton and Clymer filed "partial answers" (Docs. 77, 78) denying the allegations against them in Count XII. In their motion for summary judgment (Doc. 118), Defendants deny Plaintiff's allegations and argue that Plaintiff's Count XII claim is barred because he has an adequate post-deprivation remedy available to him under Oklahoma law.

In support of their motion for summary judgment, Defendants state that, on January 31, 2011, they participated in the execution of a search warrant at Plaintiff's home located in Cleveland, Oklahoma. (Doc. 118 at 2). The search warrant directed the law enforcement officers to search "the dwelling house, curtilage, outbuildings and all vehicles and persons," and seize "methamphetamine, snorting straws, aluminum foil, syringes, plastic baggies, containers, transactions records, receipts, other items of drug paraphernalia and records that reflect dominion and control as well as all items which are elements of the crime of: Endeavoring to Manufacture Methamphetamine." (Doc. 70-3, Ex. B). After completing the search, Defendant Clymer prepared a Search Warrant Return, listing all of the property removed from the home during the search. (Doc. 70-3, Ex. C).

The Fourth Amendment requires that all searches must be "reasonable." *Leatherwood v. Welker*, 757 F.3d 1115, 1120 (10th Cir. 2014). This reasonableness requirement applies not only to the circumstances under which a warrant may be issued, but also to the manner and scope of a search. *See Ayeni v. Mottola*, 35 F.3d 680, 684 (2d Cir. 1994), *abrogated on other grounds by Wilson v. Layne*, 526 U.S. 603 (1999); *Rivera v. United States*, 928 F.2d 592, 606-07 (2d Cir. 1991). "The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course

of a search warrant may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *United States v. Ramirez*, 523 U.S. 65, 71 (1998); *United States v. Tueller*, 349 F.3d 1239, 1245 (10th Cir. 2003) (quoting *Ramirez*, 523 U.S. at 71 ). Thus, a search that is unduly destructive or invasive in nature may violate an individual's Fourth Amendment rights. However, because damage must be excessive and unnecessary, unreasonable or malicious in order to be violative of the Fourth Amendment, incidental damage is permissible. *See Ramirez*, 523 U.S. at 71.

In this case, the officers were searching for drugs and drug paraphernalia, and Plaintiff has provided no evidence that the search was unnecessarily thorough to fulfil its purpose. The scope of the search warrant was broad. It authorized officers to enter and search Plaintiff's home, curtilage, outbuildings and all vehicles and persons, and to seize any number of a long list of items, many of them small (e.g., records and receipts) that would be easy to hide and difficult to find. "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21 (1982). Accordingly, a warrant to seize items "also provides authority to open closets, chests, drawers, and containers" in which those items might be found. *Id.* at 821. And "[w]hen a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers . . . must give way to the interest in the prompt and efficient completion of the task at hand." *Id.*

Despite Plaintiff's characterization of Defendants' search as a "rampage," he offers nothing but his conclusory allegations to support his claim that the search violated his constitutional rights.

He fails to demonstrate, or even allege, that Defendants acted with malice. Under these circumstances, the Court finds that Plaintiff's claim challenging the nature of the search of the premises does not rise to the level of a Fourth Amendment violation. *See Lewis v. City of Mount Vernon*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997) (allegation that officers left plaintiffs' apartment "ransacked" did not state constitutional violation where plaintiffs "presented no evidence that the officers wantonly damaged or destroyed property or conducted the search in a manner inconsistent with its professed purpose of finding illicit drugs"; instead, "the only inference that can be drawn is that the officers conducted a thorough search, as they were permitted to do in executing a warrant"); *see also Koller v. Hoffkins*, 2013 WL 7160331 (D. Conn. Dec. 23, 2013) (unpublished).[9]

In addition, Plaintiff fails to provide any factual support for a claim that he has been intentionally deprived of property in violation of the constitution. To the extent Plaintiff seeks return of or compensation for intentionally taken or negligently lost property, including antique jewelry, diamonds, gold, and an "undisclosed amount of cash," the Court finds that he is not entitled to either return of or reimbursement for property in this federal civil rights action. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (barring section 1983 suits alleging intentional, as well as negligent, deprivations of property without due process); *see also Durre v. Dempsey*, 869 F.2d 543, 546 (10th Cir. 1989). Plaintiff had a post-deprivation remedy in the form of a replevin action in the Oklahoma state courts.[10] *See Gibson v. Copeland*, 13 P.3d 989, 991-92 (Okla. Ct. App. 2000); *see also* Okla.

---

[9] This unpublished opinion is not precedential but is cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[10] Evidence in the record demonstrates Plaintiff's knowledge of replevin as a remedy. In Pawnee Count District Court, Case No. CV-2011-12, the State of Oklahoma sought forfeiture of $2,930 seized at the time of Plaintiff's arrest. The State argued the money was drug proceeds. In response to the notice of intent to forfeit, Plaintiff filed a "replevin action motion." *See* Doc. 70, Ex. 6.

Stat. tit. 12, §§ 1571, et seq. Oklahoma law also provides a remedy in the form of a tort action for conversion and/or destruction of property. *See* Okla. Stat. tit. 23, §§ 3, 4, 64, 68.1; Okla. Stat. tit. 76, § 1. Plaintiff does not allege that these remedies were unavailable or deficient. Therefore, Plaintiff's request for return of or reimbursement for property fails to state a claim upon which relief may be granted in this § 1983 action. *Hudson*, 468 U.S. at 533.

Because there is no genuine dispute of material fact with regard to Plaintiff's claim of illegal seizure by Defendants Clymer and Fenton, as alleged in Count XII, Defendants Clymer and Fenton are entitled to judgment as a matter of law and their motion for summary judgment is granted as to Count XII.

### 2. Defendant Hammons

In Count IX, Plaintiff alleges that, during an illegal search and seizure at his home, Defendant Keith Hammons stole $2,000 out of Plaintiff's wallet. *See* Doc. 1 at 15. In Count XII, he states that he unsuccessfully tried to file formal charges against Defendant Hammons for the "theft of $2,000 from my wallet." *Id.* at 19. Plaintiff cites his right to be free from an illegal seizure as the constitutional basis for his claims against Defendant Hammons. *Id.* Defendant Hammons filed an answer (Doc. 72), denying that he "stole any item or money from Plaintiff" or violated any of Plaintiff's constitutional rights. He also lists affirmative defenses, including qualified immunity. *Id.*

In support of his motion for summary judgment (Doc. 119), Defendant Hammons provides his affidavit. *Id.*, Ex. 1. Hammons' affidavit explains that, in 2010 and 2011, he was a Reserve

---

Plaintiff successfully argued that the $2,930 was part of an insurance payment, not drug proceeds. *See id.* As a result, the forfeiture action was dismissed, *id.*, Ex. 7, after $2,930 was returned to Plaintiff and deposited in his inmate account, *id.*, Ex. 8.

Deputy for the Pawnee County Sheriff's Office. *Id.* at ¶ 1. On March 29, 2011, he assisted with execution of a search warrant at Plaintiff's home and that based on the evidence discovered, Plaintiff was arrested for multiple drug-related felonies. *Id.* at ¶ 2. He further avers that, during the arrest process, law enforcement officials recovered a wallet containing cash from Plaintiff's person. *Id.* at ¶ 3. He states that "various law enforcement officers and I viewed and counted all of the cash contained within this wallet in the presence of Lemmons. The cash totaled $2,930." *Id.* He denies taking "money from Lemmons on any occasion." *Id.* at ¶ 4.

In response to Hammons' motion for summary judgment, Plaintiff complains that he has not been allowed to engage in discovery and informs the Court that his complaint is his affidavit in opposition to the defendants' affidavits. *See* Doc. 124.[11] As to his claim against Defendant

---

[11] In his response, Plaintiff claims for the first time that, on March 29, 2011, after he was arrested and transported to the Cleveland Police Department, Defendant Hammons subjected him to a strip search and that the search constituted a "sexual battery." (Doc. 124 at 1-2). Plaintiff failed to raise this claim in his complaint. As a result, the Court exercises its discretion to exclude the claim from further consideration here. *See Baker v. Penn Mut. Life Ins. Co.*, 788 F.2d 650, 656 (10th Cir. 1986) (stating district court has discretion to exclude argument first raised in response to motion for summary judgment when the argument was unaccompanied either by a motion to amend the pleadings or by reasons justifying an amendment). Plaintiff also complains, in his response, that the Court denied his request to amend his complaint. (Doc. 124). The record reflects that, prior to service of the complaint, Plaintiff filed a motion to amend (Doc. 16). By Order filed October 6, 2011 (Doc. 19), the Court advised Plaintiff that he was not required to obtain leave of court to file an amended complaint and directed Plaintiff to either file an amended complaint, complete in itself, or file a notice of intent to proceed with the original complaint. On November 9, 2011, Plaintiff filed a motion to supplement (Doc. 22) along with a "supplement" (Doc. 23), and a Notice of Intent to Proceed on Original Previously Filed Complaint (Doc. 24). By Order filed January 13, 2012 (Doc. 32), the Court granted Plaintiff's request to modify the record to reflect the last name of Defendant J.T. Adams, but denied Plaintiff's motion to supplement the original complaint with new claims because Plaintiff failed to comply with the Court's directive that any amended complaint be complete in itself. The Court further directed service of the original complaint by the United States Marshal. *Id.* Plaintiff did not raise a "sexual assault" claim in either his original complaint or in the "supplement." The Court notes that, in a letter to the Clerk of Court (*see* Doc. 25) Plaintiff mentions a strip-search incident allegedly occurring in February of 2011. However, Plaintiff never raised the claim in a properly filed motion.

Hammons, Plaintiff states that his "co-defendant Daniel Rogers" witnessed the sequence of events at the time of his arrest. However, Plaintiff does not claim that Rogers had personal knowledge of the contents of Plaintiff's wallet and would be able to describe its contents. Plaintiff fails to present any evidence, other than his conclusory allegations, demonstrating that Defendant Hammons took $2,000 out of his wallet at the time of his arrest.

Regardless of the validity of Plaintiff's theft claim, the Supreme Court has held, as discussed above, that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson*, 468 U.S. at 533. In support of his motion for summary judgment, Defendant cites *Hudson* and *Robertson v. Town of Farmerville*, 830 F. Supp. 2d 183, 191-92 (W.D. La. 2011). *See* Doc. 119 at 4. In *Robertson*, the plaintiffs alleged that police officers stole $1,600 from their vehicle during a search of the vehicle. *Id.* at 186. Citing *Hudson* and *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984), the Court granted defendants' motion for summary judgment on the § 1983 claim, finding that plaintiffs seeking to redress intentional deprivations of property by state actors must assert those claims as state law tort claims. *Id.* at 191-92. The same is true here. Plaintiff is not entitled to relief in this civil rights action because, as discussed above, Oklahoma law provides an adequate post-deprivation remedy in the form of replevin. *See Gibson*, 13 P.3d at 991-92; Okla. Stat. tit. 12, §§ 1571, et seq. Furthermore, even if Plaintiff proved that Defendant Hammons stole $2,000 from his

wallet, he has an adequate remedy in the form of a tort action for conversion. Okla. Stat. tit. 23, §§ 3, 4, 64, 68.1; Okla. Stat. tit. 76, § 1.

The Court recognizes that Plaintiff claims to have "attempted to file charges against Hammons," but that his attempt "never made it off the jail floor to the district attorney Rex Duncan's office." *See* Doc. 124 at 2. However, even if Plaintiff attempted to instigate criminal charges against Defendant Hammons while in custody at the PCJ, he fails to acknowledge or challenge the adequacy of the civil remedies provided under Oklahoma law.

Because Plaintiff has not suffered a loss that is actionable under 42 U.S.C. § 1983, and as there are no material facts in dispute as to Plaintiff's due process claim arising from the alleged theft by Defendant Hammons, as alleged in Count IX, Defendant Hammons' motion for summary judgment is granted as to Count IX.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The motion for summary judgment filed by Defendants Fenton, Clymer, and Stout (Doc. 118) is **granted**.
2. The motion for summary judgment filed by Defendant Hammons (Doc. 119) is **granted**.
3. This is a final order terminating this action.
4. A separate judgment shall be entered in favor of defendants.

ORDERED THIS 23rd day of October, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE